Case No. 25-1149, United States of America v. James Deshaun Williams. Oral argument is not to exceed 15 minutes per side. Craig Daly, for the appellant, you may proceed. Good afternoon. Craig Daly on behalf of Mr. Williams. I've reserved two minutes for rebuttal. We're in the courtroom of Judge Friedman. His portrait is up here, and when he would pick jurors, he would say, do you see this eagle over here? Don't feed her. She's already stuffed. So that's how we started our jury trials here in front of Judge Friedman. I have raised six claims, and the most important and the most compelling, and I believe also the most successful and promising issue for Mr. Williams is the first issue, which is not to say that the other claims are not substantial. The local police in this case, the Sterling Heights Police here in Michigan, made two really critical mistakes when they sought the tower cell dumps. First of all, they went to a magistrate attorney who lacked the authority to actually issue the order. And I think in part they did that as a matter of convenience, but I think they also chose this particular magistrate because they knew that this magistrate would accept virtually anything that was placed in front of them. And we'll talk about that a little bit later in terms of rubber stamping the order that was issued in this case. The second mistake that they made is that they decided to seek an order under the Secured Communications Act as opposed to a warrant. Had they sought a warrant supported by probable cause, I wouldn't be making this argument to you at this point. So what we know about seeking an order, as the court said in Carpenter, it is a giant departure from probable cause. And knowing that when Congress passed the SCA, they wanted to make sure that the judges that would issue those orders had certain jurisdiction. So in some... Your position is that this judge was not a court of competent jurisdiction. Yes. Competent jurisdiction, which means a court of general criminal jurisdiction. Magistrate judges in the state of Michigan have limited jurisdiction, and I don't believe that that is a matter of dispute between myself and the government. If you look to Michigan compiled laws 600.85, it sets forth all the jurisdictions and duties of magistrate, which do not include issuing an order that involves federal law. I have some questions about the scope of what was requested and what was provided. And for the moment, could you just assume that the SCA was satisfied that it was a competent order that was issued? And tell me about the scope of the information that was received. The scope of the information received is set out in the order itself, and it's very broad. It contains what we consider to be historical cell type, cell phone information across the board, identifying who the people were in a certain area, the cell dumps in two different locations. Do you know how many towers there were? They speak in terms of two towers, but my understanding or expectation is that there were a number of towers involved. Is that inaccurate? They're not talking two towers. They're talking about five specific different cell phone servers that they asked for in a certain area. But they're asking for information from the cell phone towers, correct? Towers in the plural, not a singular tower, and that specific information isn't revealed in any of the pleadings. So it could be one tower, it could be two or three or four or five different towers that are seeking information about what cell phones were actually used during that time frame in this particular area. And do you have a number on the number of information of individual users was acquired? You know, when I thought about that question, I looked at the order, excuse me, the judgment from the district court. They speak about a specific number, and so I went back to the discovery notice from the government about how many different numbers were intercepted in this cell tower dump, and I counted 31. I put in my brief 21. It's apparent that as a lawyer I don't know how to count. But many, many numbers that fit the criteria of both, there's two separate dumps that we're dealing with. One is down at the Strip Club Legends down the street here in Congress. The other one's out in Sterling Heights. Now both of these tower dumps that you're talking about were pretty narrow in time, right? One was about three hours, the other was about two hours. What authority would you have us look at for saying that that's a search? I mean, we have Carpenter, which of course you rely on much in your brief. Carpenter was looking at seven days going, you know, wherever you went. The court talks about the whole information of where your physical movements were in this time. This strikes me as, at least in some respects, narrower, at least to the person, although of course more people are also swept in. Yeah, I think that's an important question to the extent that Carpenter really is a decision that says CSLI information per se, categorically, requires a search warrant. There's nothing in the opinion that talks in itself about time frames that you're speaking about, Judge. So what the government has done is they've gone to a footnote, several footnotes in the opinion, and in footnote number three they start talking about this time frame that you've mentioned. That's not part of the decision. In that footnote, footnote three, the parties apparently suggested in Carpenter that maybe some time frame would take it outside of a reasonable expectation of privacy. And the court rejected that. What they did in Carpenter when they went through each argument of the government, whether it be third party, whether it be exposure by driving or exposing yourself in the public, they rejected all of those. And they said, you absolutely need a search warrant unless there are exigent circumstances. That's the opinion itself. In exigent circumstances, which nobody's arguing here wouldn't be covered, that they could get that information without a warrant, destruction of evidence, somebody fleeing, a juvenile or a child that's been kidnapped, nobody's arguing here that they wouldn't need a search warrant. But what the government has done is they've latched into this dicta of the footnote where the court expressly rejected it. And they said, we're not going to try to figure out whether or not one hour, two days, three days is going to be sufficient to say that there's a reasonable expectation of privacy. That would be unworkable. How are the lower courts supposed to decide that? What is it? One hour? Two hours? One day? 12 days? What's reasonable and what's not? Counsel, if you're correct though, how could Carpenter have set aside the legality of tower dumps, which it expressly did? If it's per se a search requiring a warrant to obtain any CSLI data, how could Carpenter have said we are not deciding whether tower dumps are searches? I'm sorry. It's hard for me to hear exactly what you're saying. I'm sorry, Judge. Judge Hermendorfer, if I can try and repeat for sound issues. Thank you. I think Judge Hermendorfer's question is that based on the fact that the Supreme Court explicitly says it is not deciding tower dumps, how can it be that it actually decided this CSLI issue? Well, those are two separate issues. What they're saying is that any time the government or any law enforcement seeks a CLI information, they must have a warrant. And in the decision, they said we're not deciding cell tower dumps and we're not deciding in real time information that's being conveyed. We might not read Carpenter as definitively as you do. And quite frankly, having listened to the arguments in Chaudhry yesterday, I'm not sure that any advocates or members of the Supreme Court do either. And I'm curious then on that point if it is prudent for us to wait for Chaudhry's and if you have a position on that. You know, I listened to the arguments in Chaudhry on Monday. One of the justices, and I can't tell you who it was because they don't necessarily identify who they are, said right off the bat that this is a complex issue. But the question about CSLI information is decided. I don't think there's any question that under Carpenter, you have to have a warrant, period, unless you fit into exigent circumstances. Can you add to that question? Is part of the distinction whether it's current information or historical information? Historical information, which is what we're talking about here. A cell tower dump is historical information. Always, yes. Always by definition. What it is, it's a general, it's a dragnet, opened up attempt to get as much information from as many people as possible within a certain area. And it's based on not probable cause, but proximity. And proximity has never been probable cause by any court anywhere in this country, including the Supreme Court and this court. So that's the problem. You have a general concept by using the CSA as a shortcut to a warrant. So that's the difference. They're not asking. And the thing with Chaudhry was they had specific information regarding a phone number. Same thing with Skinner that the government relies on. They've got a specific number that they're tracking, that they're looking for information, which is very different than a cell tower dump. It's wide open. Give us as much information as you can. Let me ask you before your time is up, let's assume a Fourth Amendment violation. I was looking at your argument on the exclusionary rule, and you rely on Leon, I believe. But aren't we under the Krull, K-R-U-L-L, two provisions, two considerations, because this is statutory. This was under the SCA. And Leon presents a different test than Krull does. Krull is pretty significantly an objective test. Yes, that's correct. So there's two different things here in terms of suppression and good faith. One under the statute, in the violation of the statute, we look to this court's decision in Warshak. Warshak was issued by Judge Boggs and concurred with Judge McKee. And what they said is that when the police, which is the focus of the exclusionary rule and good faith, when they act outside of the scope of a statute, exclusion applies and good faith does not. And that's exactly what we have here. Because the police went to a magistrate that they knew had limited jurisdiction. They knew that under the law of Michigan that this particular magistrate judge, who was appointed by the district judge, not elected, didn't have authority to issue the order in the first place. That was their choice. What is the relationship between the violation of the Fourth Amendment and the Leon factors in the circumstances of a warrant and these orders under the SCA, which is a statutory provision that itself does not include suppression? That's correct. It's not authorized. That's correct. Section 2708 says the only remedies that are available are those in the statute itself, which is a civil remedy or criminal prosecution but not suppression, which gets us back to Warshak because Warshak directs our attention to the conduct of the police, not to the judge, because the exclusionary rule is aimed at the police. And second of all, if you combine the violations of the SCA in this case and the Fourth Amendment, then now we are to suppression and now we are to good faith, which gets us to when we start looking at the application and the order in this case, it's pretty clear, and the warrant, the so-called probable cause warrant, these were both issued by the same magistrate judge. So there's a pattern of the police going to a judge that they know is going to stamp everything that they want. Do you have more questions? Judge Hermendorfer? Okay, great. We will hear from your friend on the other side. Thank you. Thank you very much. May it please the court. My name is Jessica Curry and I represent the United States. This court should affirm the criminal judgment in this murder for hire case. I'll also focus on the Fourth Amendment issue. The district court properly denied the defendant's motion to suppress for two reasons. First, a tower dump with limited parameters is not a search within the meaning of the Fourth Amendment. And second, even assuming it is a search, law enforcement here acted in good faith reliance on a disclosure order obtained under the Stored Communications Act. At that first point, can you talk to us about the scope of the information that was ordered to be turned over for the tower dump? And in particular, if I'm looking at the end of the order, it's saying that you're getting the names, or maybe you got them or not, I don't know, but this is what is ordered. Names, addresses, credit and billing information of subscribers. This seems like a lot more than just the telephone numbers of the folks who are within the proximity of the Legends Club and the apartment. Is it possible, Your Honor, that you're referring to the search warrant? I'll just tell you, I'm looking at page ID 263 and record 44-2. I'm looking at this order. I see. It says it is ordered pursuant to Title 18 U.S.C. Section 2703. So I assume that this is the SCA order. The results of this order, the disclosure, was phone numbers, the time, the duration, whether it was on the receiving end or the outgoing call, and the tower connection. The tower dump is just a record of device connections during the specified intervals and of towers covering the specified locations. To my knowledge, information beyond that was not actually disclosed. Do you think an order like this constitutes a search under the Fourth Amendment? It does not. Assuming the language, we can talk about what actually was disclosed here, but asking for names, billing information, does this order itself kind of pass the CATS test? Just with respect to the billing information? Yeah, names, addresses. We subpoena subscriber information, so that isn't a search. When you get into content, certainly there is a search, and a search warrant is necessary. But tower dumps don't involve content, and understanding the technology is crucial. A tower dump is not a tracking tool. It does not reveal the precise location of devices and does not reveal any physical movement. Is that why Skinner is really not the most applicable authority for this case? It is applicable because it involves a shorter term cell site location information spanning three days, and we're well under that period. A single suspected individual in Skinner in real time. So that's a very distinct requirement from what a tower dump is. That he is looking at historical data, and kind of cradle to grave historical data. So what is your best authority for your position post-Carpenter? Post-Carpenter, Carpenter itself is my best case, because the concerns expressed in Carpenter are absent in the case of a tower dump. Carpenter's holding was very narrow. It said that seven days of cell site location information. The problem was that it amounted to near perfect surveillance, and it invaded Carpenter's reasonable expectation of privacy in the whole of his physical movements. It was a chronicle of someone's daily life, and that is when location information becomes a search. Those concerns are not present here. No physical movements were captured. This is a snapshot of a person's imprecise whereabouts, and that says very little about their daily life. Well, it found someone at a strip club. If you're talking about your privacy, your ability to avoid the permeating surveillance of the police, your position then would be, I can track you as long as I'm narrow time-wise, and I can track you anywhere you go. I can find your church. I can find your inappropriate relationships. I can go wherever you are. Doesn't that raise a completely distinct question from the Skinner line of following someone with currently? So, yes, this is not tracking, but it also, this tower dump did not place anyone in a strip club. It placed them in the vicinity. It showed whose devices. How can we make a rule from that? What would be a practically and reasonably enforceable rule that you're advocating for that would protect the privacies of individual citizens? A rule that so long as the cell site location information does not enable law enforcement to track anyone's movement or provide their precise location, it's not a search. I mean, even the point was- Counsel, can you all hear me? Sorry.  Does it matter that at the initial dump from the tower that, to get back to Judge Bloomcat's question, the numbers are anonymized and it's only when you're able to cross match two different towers at two different times and come forward with more robust allegations of that, like to suspect that a particular subset of numbers will be a witness or perpetrator, that you're then able to actually unmask who the numbers are? Does that matter to the analysis, the anonymity of the numbers at step one of the tower dump? Yes, it absolutely does. The tower dump is just phone numbers. But is it anonymized? Like in Chaudhry and some other cases we have where they're using not the actual telephone numbers. They're using anonymized data that's not actually somebody's telephone numbers. Here you've got the actual telephone numbers. Correct. That is correct. You just didn't get who they were. Correct. Although under this order you could have. Well, any phone number we can- Right. You can look up anyways. But it's very different if it's like the situation in Chaudhry where it's not even somebody's actual telephone number. You can't get more information until you start to see a matchup. Sure. But I would say it's no different from- Innocent third parties, they get swept up into investigations. It's a reality of investigating that innocent people, information about them comes into the hands of law enforcement. That information is handled with care. This information is obtained by legal process. What rules require that information to be handled with care? What happens under this order to that information after they get the information on the two individuals that they're trying to find out about? As officers of the court, investigative materials are to be handled with care. The government is not seeking more information. They're seeking a narrow universe of information. In a tower dump situation, the interest of protecting privacy actually aligns with the government because the government is only after these overlapping common numbers. If the government's after the common numbers from each side, why doesn't it ask for the overlapping numbers as opposed to getting everybody in both data sets? Law enforcement in this case actually did additional work in analyzing the numbers that overlapped. For example, we were able to determine that the victim number, the number of the victim, we're not interested in the victim, so we're able to eliminate- Right, but if you were asking for overlap from the carriers, you would have gotten four numbers. You would have been able to look and see, okay, well, this one is the victim. So why isn't that a more- I mean, particularly to the extent we think about Fourth Amendment constraints, again, the search issue, but assuming it is a search, we need particularity. Why doesn't it make sense just to get the overlapping information? I think that could have been done, but it wasn't required here. Again, because this is not a search, number one, and it would be asking a third-party carrier to play investigator, and I think that would not be appropriate. So we do sit through- But in a way, isn't that what you're asking? With a tower dump, is the beginning of an investigation sometimes revealing people that had not thought to be involved at all? The fight, so to speak, at the strip club followed by the murder at the apartment, those were not- the victim overlapped, but the perpetrator did not, right? I mean, isn't this a question of finding initial numbers in the step one that you then seek to condense down to more applicable numbers in step two? Dump into the specifics, step one, step two, right? Williams was at both locations, so I guess I am confused by the premise of the question, and law enforcement narrowed it down to just him because of the connections were 15 minutes after the victim left and six minutes after the murder. You're correct, but the murder here was by C.W., right? Correct. This is a murder for hire case. Yes, yes. Yes, and he was in the vicinity, though. He didn't- Williams was in the car, same car as C.W. C.W. leaves the car, actually pulls the trigger, but Williams is the man charged here. So this tower dump worked exactly how it was designed to do. And just returning a moment to whether this is a search, just even logically, as phone users, we hope for a strong connection to a tower. Connecting to a tower is exactly what phones are designed to do, and being in the range of a cell tower that our device connects to is not something that we expect to be private. And I'll give a few other examples. Automated license plate readers, easy passes, security footage, innocent people are swept up in that information all the time, and that shows actually a precise location. A tower dump does not tell you a precise location. It is only as good as it is. It is a connection to a tower. Now, further investigation- Carpenter suggests that's a pretty intensive connection, isn't it? Doesn't Carpenter itself say this is approaching GPS specificity? So on that comment, Your Honor, actually at trial, this was a focus of the defense when they were cross-examining Agent Reinhart. All right, and you can't say, well, bottom line is you cannot say where the phone was actually located, correct? Answer, correct. I cannot give you the exact location. And then there's talks about, well, I'm talking about, for example, GPS, right? GPS is a cell phone's movements using signals received from a satellite, correct? Yes. And it gives an exact latitude and longitude of where the phone is, correct? Answer, depending on the source and what application you're using, yes, it could. So this is not precise information. It is just an investigative tool, and it's a good one at identifying a suspect, but it is not tracking them. So what would you suggest as an effective and safe test? You're talking now about a limited time frame, overlap between two different locations, but there are a number of parameters that move with this test. Is time, amount of time that it's looking at, is that your only variable? Or what are the other rules that you would have us look to to determine the propriety of that type of search? In light of Carpenter, I think articulating mathematical tests with bright lines is just not workable in this situation, and I think along the lines of Carpenter, a test that would be looking at whether the data is such that law enforcement would be able to deduce someone's movements over an extended period of time, and that in different situations could mean different things. But in this case, we got three hours at one location and two hours at the other. These locations are 20 miles apart. It's 3 in the morning. The parameters here are appropriate. It is not needlessly sweeping up information that wouldn't be relevant to the investigators. And in fact, the investigators, as I mentioned, it's in their interest to define these parameters narrowly because that's how the test works. And so I don't believe it's working. But here, you're arguing for the importance of this test, but am I wrong that on this fact record, the investigation using the test had paused for not providing sufficient information? Wasn't it CW that came to the police and gave them Williams' name? It wasn't the CSLI that ultimately got the police back involved in this investigation, was it? It was, in fact, on the ground talking to somebody else. Isn't that right? Yes, this was a cold case investigation, but that doesn't negate the importance of that investigative step with the tower dump. So the tower dump revealed this number, the 0044 number. In fact, an agent called the number, but they couldn't identify who this was, and he answered, it's James Williams. Now, and I think the fact that we have the cooperator CW later on just goes to show that this is just a piece of an investigation identifying a suspect. It always needs to be corroborated. We're not going to be charging people based on a tower dump alone. Much more needs to take place, and I guess the local law enforcement in this case didn't think they had enough to charge until the federal government took another look at it later on, again with the assistance of a cooperator to establish what happened here in order to convince a jury of it as well. I see that my time has expired long ago. We've kept you up here peppering you with questions. Judge Hermandorff, any further questions? Great, thank you.  You'll have two minutes for rebuttal. Thank you. All right. Maybe I should have kept my four minutes in the first place. Anyhow, I think the importance of Carpenter is that there's a reasonable expectation. Anytime the government tries to get CLSI because it involves movement and there's no time frame in which you can discern from that when the Fourth Amendment is involved and when it isn't. So the government has just said, you know, this isn't precise information. So if you take their argument, that flows against the Fourth Amendment, right? Because the Fourth Amendment says we don't allow general searches, we don't allow searches based on proximity, and we don't allow the police to determine what information they're going to go through. And that's the problem with the cell tower dump because when they get all this information from all these different people who are in the proximity, then it's left up to the police to rummage through all that information and for them to decide what's relevant and what isn't relevant, and that's contrary to the Fourth Amendment. So when the government just argued that this doesn't involve a movement, it does, because there were two different locations. There was the Ledge and Strip Bar, and then there's the place out in Sterling Heights. And so as Judge Strauss said, if they're tracking anybody's movement, whether it's for an hour or five minutes, you have an expectation in privacy that the government's not going to track somebody to an abortion clinic, to a synagogue, to a strip club, or to a psychiatrist's office. That's what this is about because there is movement based on these records because they cover a certain amount of time. And tower dumps that are different than everything else that we've been talking about and all the other cases is they're not looking at a specific number. What they're looking for is as much information as they can, and then they're leaving it up to the police to try to narrow it down without probable cause and without any direction from any court. Are there any questions? I think we're good. We have your argument. Thank you very much. Thanks to both parties. Case will be submitted.